King, J. (orally).
The judgment in the court below was in favor of the village of Bowling Green. Suit was brought in the Court of Common Pleas by the village to recover a certain sum of money expended for lighting the tracks of the Cincinnati, Hamilton & Dayton Railroad Company at certain street intersections. The amended petition in the case sets forth very fully and in detail the steps that were taken by the village to perfect its right to maintain this action. To this amended petition a demurrer was filed by the Railroad Company, which was argued and decided by the Circuit Court of this county at a former term. In that decision several questions arose and were passed upon, and we shall not undertake to review that decision.
The case was tried in the Court of Common Pleas on testimony, and sundry requests to charge were submitted by the Railroad Company, which were refused, and to which exceptions were lodged, and the charge itself is objected to. All the objections and exceptions go to a few questions that are raised by the Railroad Company.
*525 In the first placé, the village of Bowling Green passed an ordinance in 1891, which was an ordinance entitled, “An ordinance to provide for the lighting of the track of the Cincinnati, Hamilton & Dayton Railroad Company operating the Bowling Green Railroad, within the corporate limits of the incorporated village of Bowling Green, Ohio.”
It seems from the testimony set ont in the bill of exceptions that at one time ■ there were two railroads that had tracks and .right of way and had one of their termini in Bowling Green. One was the Bowling Green Railroad, and the other was the T. F., & S. R. R. These tracks became connected, and being connected, were operated under a lease, and are now in some form operated or controlled by the Cincinnati, Hamilton & Dayton Railroad Company.
It is objected that this ordinance in its title provides for the lighting of the tracks of the Cincinnati, Hamilton & Dayton Railroad Company, operating the Bowling Green Railroad Company. It is said that the Bowling Green Railroad has its terminus in the village at a point beyond these intersections included in the ordinance, and for this reason it was not notice to the Cincinnati, Hamilton & Dayton Railroad Company, because it was not described properly in the title of the ordinance. We think that is immaterial. The ordinance provides that the Cincinnati, Hamilton & Dayton Railroad Company should light certain street crossings; it was described as operating the Bowling Green Railroad Co,, and if the council had simply called it an ordinance to provide that the Cincinnati, Hamilton & Dayton Railroad which operated these tracks, should at certain points light the same, that would have been a good title.
The ordinance provides that it shall light its tracks at seven street intersections; five of them were lighted by the village, and two were not, and it is for the expense of lighting these five that this suit is brought.
It is claimed again that in the second ordinance passed *526 by tbe village after tbe lighting had been performed and payment made to the parties doing the lighting, that the second ordinance provided that the Cincinnati, Hamilton & Dayton Railway Company should be assessed for this lighting, and that they were notified under that name that they had been so assessed. -
That is claimed to be such a variance of their corporate name as would render the assessment invalid. We think not. . ,
We think the variance of the name is immaterial. That it is practically the same name; that the material question is, did the Cincinnati, Hamilton & Dayton Railroad Company have notice of this assessment and notice of this lighting?
The testimony shows that their agent and general superintendent was served with such a notice as was required by the statute, and the general superintendent is such an officer as has the general management of the affairs of the Railroad Company.
That notice came directly to the Railroad Company, and it being denominated a Railway Company would not be material.
It was held in a case in the 36th Ohio State, at page 296, where a corporation whose name is composed of several words, is sued by a name in which a word in the corporation is omitted, such omission or misnomer, unless pleaded in abatement, will be disregarded by the court.
This was a case where the American Bell Telephone Company was sought to be sued, but for some reason it was denominated as‘The Bell Telephone Company. ’ The court held the misnomer was not fatal to the jurisdiction. It was shown that the serivee' of the writ was in fact made upon the proper agent of the American Bell Telephone Company.
Under such a holding I do not see why you may not serve a mere notice that you have a claim against a person *527 and thereafter sue him in his right name to collect it. The Cincinnati. Hamilton & Dayton Railroad Company could not have been misled by a notice served upon its General Superintendent, directed to the General Superintendent of the Cincinnati, Hamilton & Dayton Railway Company. So we think that is not material.
I shall now go to these requests to charge which express the material objection to the whole proceedings'. In the first place it was requested that the court should charge, “that all ordinances passed by village councils, in order to be legal, must contain no more than one subject, and this one subject must be clearly expressed in the title of such ordinance. ’ ’
That was not a question to be submitted to the jury. The court could determine that, as that was a question of law. 2nd. “The title of the ordinance pleaded and relied upon in this action and introduced in evidence is: ‘An ordinance to provide for the lighting of the track of the Cincinnati, Hamilton & Dayton Railroad Company, operating the Bowling Green Railroad Company within the corporate limits of the incorporated village of Bowling Green, Ohio. ’ This being the title of the ordinance, it must be held to clearly express the subject intended to be provided for by the ordinance, and in this ordinance the subject is the ‘lighting of the track of the Cincinnati, Hamilton & Dayton Railroad Company, and not the lighting of the track of the Bowling Green Railroad Company, and that part of the title of the ordinance relating to the Bowling Green Railroad is only descriptive of the Cincinnati, Hamilton & Dayton Railroad Company. This being true, the plaintiff cannot recover in this action, and upon this ordinance for the lighting (if it did light) of the track of the Bowling Green Railroad Company within the village of Bowling Green.”
I have referred to that question already and will pass it *528 by. The third request is: “Section one, of the ordinance providing for the lighting for -which this action was brought to recover, provides that the defendant shall cause a portion of its railway within the corporate limits of the village of Bowling Green to be lighted with electric lights by causing one electric lamp with the necessary attachments then used by the village, to wit: December 21st, 1891, and the said electric lamps were required to be erected over said railway at .the intersection of said track with the Ridge Road, Adams street, Ordway avenue, Pearl street, West Wooster street, Wallace avenue, Morton avenue and Brown Road; but this action relates to -the lighting of the track at the intersection only of Brown Road, Wallace avenue, Wooster street, Pearl street and the Ridge Road, whilst the ordinance relied on and introduced in evidence in this cause nowhere provides for the lighting of any street called ‘Wooster Street,’ and therefore, as to that street, no recovery can be had against the defendant in this action.”
That request is predicated upon the fact that West Wooster street was named in the ordinance, and suit was brought to recover for lighting Wooster street. Was the Railroad Company misled by that? The track of the railorad company only crosses Wooster street at one point, and that was at West Wooster street in the western part of the village of Bowling Green, and to call it West Wooster street would only be to identify the particular place where the company was required to light the track on Wooster street. In the suit it is described as Wooster street, which is the real name of the street; it was the western end or part of Wooster street in the village of Bowling Green, and the Railroad Company was not misled by that description of the street. That was simply an additional notice to them of the place.
Then this request goes on further: “Plaintiff must show by a fair preponderance of the evidence, first: That the Cincinnati, Hamilton & Dayton Railroad Company refused *529 or nelgected to erect lamps and attachments of the kind described in the ordinance and to light the same within twenty days after the passage of said ordinance. Second: That after the lapse of the twenty days provided in the said ordinance, the village of Bowling Green erected the lamps and attachments of the kind provided for, over the railway at the intersection of said street with the track of the defendant; and third: that plaintiff caused the lamps so erected by it to be lighted for the time and in the manner as required by said ordinance at the expense of the defendant, and if the plaintiff fails to show by a fair preponderance of the evidence either of these three things, then it cannot recover. 5 ’
Now, certain things are assumed there, or the point of that request is this: First it must be shown that the Railroad Company refused to erect lamps and attachments of the kind described in the ordinance, and to light them, within twenty days after the passage of the ordinance.
It was not the object of the ordinance to require them to erect lamps and attachments, or hat after a lapse of twenty days, then, the village must have erected' lamps and attachments. That was not the purpose of the ordinance. The ordinance reads: “ In case such company shall fail to comply with the requirements of the same for a period of twenty days from the delivery of said notice, then the said village of Bowling Green shall cause said lamps to be erected, and said lighting to be done at the expense of said Railway Company, etc. ’ ’
I do not think a fair construction of the statute under which the village acted, requires the erection of lamps, and I will refer to the statute which reads: ‘ ‘ When it . is deemed necessary by the council of any city or village to have any bridge or railway located in whole or in part in such corporation, owned, possessed or operated by any individual, company, association *530 or corporation, or any portion of the same lighted, the Council shall pass an ordinance for the purpose, requiring the individual, company, asssociation or corporation, owning, possessing or operating the same to light such bridge or railway within a specified time. ’ ’ And if it is to be lighted in any particular manner, then the following section provides the character of the lights. I will read the section: — “The ordinance shall specify the manner in which such bridge or railway shall be lighted, the number and style of lamp posts, lights and fixtures, and the time such lamps shall be kept burning in each twenty-four hours.”
■ ■■ They did in this ordinance provide that the lights should be similar to others used in the village. They knew what those were and what kind of light they gave forth, and required the company to make them uniform with them. It is not an answer to say that those lamps and attachments are the property of a corporation who would not sell them. The purpose to be accomplished was to light the track, and it was not a matter of any consequence who owned and operated or who furnished the light. So, if that was the only purpose, the village would accomplish it by notifying the Railroad Company that it should light these tracks, and should do it in a certain manner, and if it failed to light the tracks, then the village could procure it to be done in the manner it saw fit.
In this case there was a private corporation furnishing light for the village of the character and style prescribed in the ordinance. The Railroad Company refused to light its tracks, and the village passed this ordinance and presented the Railroad Company with a bill which it had assumed for the payment of the lights furnished; the company refused to pay the bill, and the village brought this suit. I do not see why that does not come within the provisions of that Statute.
The law does not require the village to furnish the light, *531 but it says they shall provide by ordinance for the lighting of the tracks. This has been done by the ordinance that was passed, and I do not see any abuse of the authority of the village in that respect.
Then the next request is: ‘‘At the time of the passage of the ordinance requiring the defendant to light its track in the village of Bowling Green to-wit: December 21st. 1891. there was no law authorizing the council of the village of Bowling Green to pass an ordinance requiring a railroad or railway company to light its track within such village by electric lights, and no law was in existence of that kind until April 13th, 1894; therefore the ordinance in so far as it required the defendant to light its tracks with electric lights was null and void for want of authority on the part of the council of Bowling Green to pass such ordinance.
The statute which I have read does not authorize in express terms the village of Bowling Green or any other village to procure any particular kind of light, that is, whether the' lighting shall he by oil, tallow, electric lights, artificial or natural gaor in any other way ; and so far as the point in that request is that the statute did not expressly authorize electric lighting, it does not seem to have a great deal of force.
If the statute did specify kinds of lights then in use, and was passed at a time when electric lights were unknown, and if electric lights afterward came into general use, then it would by reason of the fact that it was a new discovery, become incorporated in the statute unless then' was a special prohibition against it.
It was also urged during the trial that the village when it had these lights located, did not locate them directly over the center of the track.
The ordinance provides they should light those tracks, and the lamps, it seems, were located over the right of way, *532 but at some distance above the ground, and from fifteen to twenty feet away from the tracks, but there is no evidence tending to show that those were not proper points at which to place the lamps, or that they did not light the track even better than if erected over its center. So long as the Railroad Company refused to light its own tracks, we do not see that it is in a position to complain, if the lights are so placed that they carry out the purpose of the ordinance and light the tracks.
R. D. Marshall and F. A. Baldwin, for plaintiff in error.
Barker & Moore, and G. H. Long, for defendant in error.
Whether the amounts that are claimed in this case for this service are unreasonable or not, that question has not been made in any manner, so we cannot take notice of it. The bill, so far as the record shows, is reasonable.
We therefore affirm the judgment of the Court of Common Pleas, without penalty.